IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILIP LIEBERMAN | : |
| Plaintiff, | : |
| v. | : C.A. No. 1:19-cv-01730-RGA |
| BEYONDTRUST CORPORATION (f/k/a BOMGAR CORPORATION), a Delaware Corporation, | : |
| Defendant. | : |

MEMORANDUM ORDER

The Plaintiff, Philip Lieberman ("Lieberman"), initiated this action against Defendant, BeyondTrust Corporation, on September 13, 2019. (D.I. 1). BeyondTrust filed an answer to Lieberman's complaint that included counterclaims asserting causes of action against Lieberman for fraudulent inducement and negligent misrepresentation. (D.I. 6, Counterclaims ¶¶ 40-53). Before the Court is Plaintiff's motion to dismiss both counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 14 at 3-6). The motion is fully briefed. (D.I. 14, 20, 21). For the reasons set forth below, the Court denies Plaintiff's motion.

I. BACKGROUND

Plaintiff sold his software corporation ("Lieberman Software") to Defendant on January 17, 2018. (Counterclaims ¶ 16). Shortly before this sale, Lieberman Software entered into a software license agreement with the United States Department of the Army and/or its affiliates. *(*Counterclaims ¶ 18). The software agreement was a one-year license of Lieberman Software's "privileged identity solution" product with an option to renew for four years. (Counterclaims ¶¶

18-20). On December 26, 2017, Lieberman Software provided a quote to the Army for the software agreement and the next day Lieberman Software received a purchase order for the product for one year. (Counterclaims ¶¶ 19-20). BeyondTrust was provided with a copy of both the quote and the purchase order. (Counterclaims ¶ 26).

As a result of this deal, Lieberman Software's enterprise value nearly doubled. (Counterclaims ¶ 6). BeyondTrust largely based its valuation of Lieberman Software on the software agreement being exercised for all option years available. (Counterclaims ¶ 18). The Army did not renew the licensing agreement after the first year due to challenges and constraints associated with the software product. (Counterclaims ¶ 39).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[C]ourts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Nuance Commc'ns, Inc. v. MModal LLC*, 2019 WL 181322 at *1 (D. Del. Jan. 11, 2019).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 545. Factual allegations do not have to be detailed, but may provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.").

Moreover, there must be enough factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Rule 9(b) of the Federal Rules of Civil Procedure adds a heightened pleading standard for allegations of fraud. It requires a party alleging fraud or mistake to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b).

### III. DISCUSSION

Lieberman challenges the sufficiency of the allegations raised in BeyondTrust's counterclaims. I will analyze each cause of action to determine whether Defendant has stated claims upon which relief can be granted.

#### A. Fraudulent Inducement

In Count One, BeyondTrust contends that in order to close the deal with BeyondTrust at an artificially inflated purchase price, Lieberman falsely represented that the Army had committed to a non-negotiable five-year contract. (Counterclaims ¶ 41). Plaintiff moves to dismiss the fraudulent inducement counterclaim by arguing that not only has Defendant failed to sufficiently plead justifiable reliance but also that Defendant's fraud claim is precluded by the integration clause in the purchase agreement. (D.I. 14 at 6).

### 1. Defendant's Fraud Claim Is Not Precluded by the Integration Clause

Defendant is not precluded from asserting a fraud claim based on extra-contractual representations made prior to entering the purchase agreement. Delaware courts enforce clear anti-reliance provisions. *See Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015); *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006). However, to be enforceable, the anti-reliance provision must contain a promise by the [buyer] that it did not rely on extra-contractual statements. *Abry Partners*, 891 A.2d at 1059. If parties "fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners." *Id.* Moreover, unless the agreement contains explicit anti-reliance representations and is accompanied by other contractual provisions demonstrating, with clarity, that the plaintiff agreed that it was not relying on facts outside the contract, the presence of a standard integration clause alone will not suffice to bar fraud claims. *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

Here, the purchase agreement does not contain unambiguous anti-reliance language. Lieberman argues that the Entire Agreement clause in the purchase agreement nullified any "prior understandings, agreements, or representations by or between the parties, written or oral." (D.I. 1, Ex. 1 (Purchase Agreement) § 8.3). Section 8.3 does states that the purchase agreement supersedes prior understandings, agreements, or representations; however, BeyondTrust did not affirmatively promise not to rely on such representations. *Id.* The standard integration clause here, without more, is not enough to establish a clear anti-reliance provision enforceable under Delaware law. Thus, § 8.3 does not prohibit Defendant's fraud counterclaim. *See Kronenberg*,

872 A.2d at 590 (finding fraud claim not barred by a nearly identical standard integration clause).

## 2. Defendant Adequately States a Claim for Fraudulent Inducement

Turning now to the sufficiency of the pleading, to state a claim for fraudulent inducement under Delaware law, a plaintiff must "satisfy all the elements of common-law fraud." *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 145 (Del. Ch. 2003). These elements are "(1) the [plaintiff] falsely represented or omitted facts that the [plaintiff] had a duty to disclose; (2) the [plaintiff] knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the [plaintiff] intended to induce the [defendant] to act or refrain from acting; (4) the [defendant] acted in justifiable reliance on the representation; and (5) the [defendant] was injured by its reliance." *Abry Partners*, 891 A.2d at 1050.

BeyondTrust has alleged that Lieberman made numerous material representations that the software agreement with the Army contained a non-negotiable five-year term. (Counterclaims ¶¶ 23-28). Defendant specifically describes five statements made by Lieberman, or his financial advisor, to form the basis of its fraud claim:

(1) "[T]he Army planned to renew the [s]oftware [a]greement for all four option years available under the [s]oftware [a]greement," (Counterclaims ¶ 23);

(2) "[T]he Army deal was a lock," (*Id.*);

(3) "[T]he Army planned to deploy the [s]oftware [p]roduct on a much larger scale long term," (Id. ¶ 24);

(4) "[T]he Army would issue a purchase order each year," (*Id.* ¶ 26); and

(5) "[T]he Army had embedded the [s]oftware [p]roduct in its technology systems, and that the Army had a long-term implementation plan for the [s]oftware [p]roduct," (*Id.* ¶ 28).

Defendant not only identifies the party making these representations but also includes the substance and approximate date of each statement. (Counterclaims ¶¶ 23-28). Defendant further alleges that Lieberman knew that the representations were false for several reasons including that the Army was "far from dedicated to the software product" and "refused to sign an upfront, perpetual license agreement." (Counterclaims ¶ 30). BeyondTrust alleges that Lieberman made these statements with the intent to induce it into purchasing Lieberman Software at an artificially high price, and that it suffered damages due to this overpayment. (Counterclaims ¶ 26).

In support of his motion to dismiss Lieberman does not argue that BeyondTrust's allegations are inadequately detailed. Instead, he contends that Defendant's reliance was unjustifiable because the representations were necessarily predictive statements of opinion and not statements of present fact on which fraud can be based. (D.I. 14 at 6-7). Under Delaware law, predictions about the future and expressions of opinion cannot give rise to actionable common law fraud. *Great Lakes Chem. Corp v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001). Classifying a representation as a predictive statement depends on whether it depicts present existing facts or merely describes forward-looking projections such as hoped-for results. *Id.* (statement identifying deferred orders as the cause of the decline in sales was akin to a statement of present fact, but generic sales projections were not actionable representations).

Moreover, in a recent case, the Court of Chancery distinguished between benign forward-looking statements and predictions or estimates made with the intent to deceive. *Clark v. Davenport*, 2019 WL 3230928, at *12 (Del. Ch. July 18, 2019). Specifically, the court in *Clark* explained that "when a party makes false statements with an intent to deceive, that party may be liable for fraud regardless of whether the statements expressed opinions, estimates, or projections

of the future." *Id.* (citing *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 458 (Bankr. D. Del. 2006)). In other words, predictions about the future, honestly made, cannot form the basis of a fraud claim. However, if those predictions were knowingly false when made, then there is a viable cause of action for fraud.

Here, there are two possible interpretations of Lieberman's statements to BeyondTrust regarding the contract with the Army. Either the representations were merely predictions about the Army's use of the software in the future, or they can be construed as statements of the present status of Lieberman Software's business relationship with its largest client, the Army. Lieberman's argument that the representations are of the former type may ultimately prevail on a fully developed factual record. I cannot conclude at this stage, however, that such an interpretation is the only correct one as a matter of law.

Thus, taking all of BeyondTrust's factual allegations in Count One as true, it appears plausible at this preliminary stage of the litigation that Lieberman could be liable for fraudulent inducement based on false statements made to Defendant about the extent of the Army's commitment to the product and the expected length of the software agreement. Accordingly, the Court denies Plaintiff's motion to dismiss Count One of Defendant's counterclaims.

### B. Negligent Misrepresentation

In addition to its fraud claim, BeyondTrust asserts a negligent misrepresentation claim in Count Two of the Counterclaims. (Counterclaims ¶ 48). To successfully assert a claim for negligent misrepresentation under Delaware law, the claimant must adequately plead (1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss

caused by justifiable reliance upon the false information. *See Atwell v. RHIS Inc.*, 2006 WL 2686532 (Del. Super. Aug. 18, 2006); *see also*, *e.g.*, *H–M Wexford LLC*, 832 A.2d at 147 n.44. BeyondTrust not only alleges that Lieberman's statements about the scope of the contract with the Army were false, but also that he failed to exercise reasonable care when he supplied the information. BeyondTrust further claims that it suffered financial harm by relying on Lieberman's statements because it used the expected revenue from the five-year agreement to calculate the purchase price of the sale.

Plaintiff asserts that Defendant failed to adequately plead the elements necessary to establish negligent misrepresentation. Specifically, Lieberman argues that BeyondTrust's counterclaims are devoid of any allegations of a fiduciary relationship between the parties and that BeyondTrust was not justified in relying on the information he provided. (D.I. 14 at 3-4).

### 1. A Fiduciary Duty is Not Required to State a Claim for Negligent Misrepresentation.

Lieberman contends that a lack of a fiduciary relationship between the parties here is fatal to BeyondTrust's negligent misrepresentation claim. However, this theory is flawed because it unnecessarily narrows the pecuniary duty element of this cause of action.

A "negligent misrepresentation claim, like an equitable fraud claim, is in essence a fraud claim with a reduced state of mind requirement". *Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048 at *8 (Del. Ch. Apr. 20, 2008). However, because the state of mind requirement is lessened to that of negligence, the doctrine of negligent misrepresentation requires additional elements to compensate for this concession. *Id.* The pecuniary duty element serves as a "policy trade-off for the reduction in the state of mind required to recover by paring down the class of potentially liable defendants to those with a pecuniary duty to provide accurate information." *Id.* Essentially, the pecuniary duty element limits the reach of the negligent

misrepresentation doctrine to situations where the "information provider expects to profit from the course of conduct in which he provides the information." *Id.* at *9. In such situations, the party making the representation can reasonably be expected to take reasonable care in providing the information. *Id.* (explaining that the pecuniary duty ultimately penalizes those who expect to profit from the exchange while protecting individuals who provide information gratuitously).

While a fiduciary relationship would, as Lieberman argues, amount to conduct where the information provider expects to profit, it is not the *only* way to establish a pecuniary duty for the purposes of a negligent misrepresentation claim. In fact, representations made by a party in the course of a business transaction in which that party has a pecuniary interest often form the basis of negligent misrepresentation claims. *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, No. CIV.A.99C-09-151-JRS, 2001 WL 541472, at *5 (Del. Super. Ct. Apr. 12, 2001) (a duty of disclosure will arise when the parties are in the midst of a "business relationship" from which they expect to derive "pecuniary" benefits); *see also*, RESTATEMENT (SECOND) OF TORTS §§ 551-552 (1997).

Here, the transaction between Lieberman and BeyondTrust was a sophisticated business transaction that took place over an extended period of time. Though there was no fiduciary relationship, Lieberman had a pecuniary interest in this transaction because he was the sole owner of Lieberman Software. Therefore, he had a duty to exercise reasonable care to provide BeyondTrust with accurate information.

### 2. BeyondTrust Could Have Justifiably Relied on Lieberman's Oral Representations.

Lieberman also maintains that BeyondTrust inadequately alleged the element of justifiable reliance. Specifically, Lieberman argues that, as a matter of law, Defendant could not have justifiably relied on Lieberman's statements that the Army was committed to a five-year contract

term because BeyondTrust was given a copy of the Army's purchase order that expressly indicated a one-year license of the product.

To support his argument, Lieberman cites a number of cases that demonstrate how Delaware courts dismiss claims for negligent misrepresentation where oral representations contradict clear contractual language. *See, e.g.*, *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *21-22 (Del. Ch. Sept. 30, 2014); *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 550455, at *14 (Del. Ch. Dec. 30, 2010); *DeBakey Corporation v. Raytheon Service Co.*, 2000 WL 1273317, at *22 (Del. Ch. Aug. 25, 2000). In those cases, the courts held that reliance is not justifiable where express terms in written agreements contradict the oral representations in question. For example, in *DeBakey Corporation*, it was unreasonable for the plaintiff to rely on the defendant's' promise to provide more than $2 million in funding when both parties had agreed to a contract with a provision that gave the defendant discretion to terminate once that amount was reached. *DeBakey Corporation*, 2000 WL 1273317 at *22.

The representations made in the case at bar, however, are factual distinguishable. Here, Lieberman made multiple representations to BeyondTrust that the Army "planned to renew the software agreement for all four options years" and that the Army "would issue a new purchase order each year." (Counterclaims ¶¶ 23-26). These statements are not directly contradicted by the Army's purchase order of a one-year license with the option to renew and BeyondTrust reasonably could have relied on these representations to enhance its understanding of the likelihood that the Army would exercise the full five-year term. Furthermore, in Count Two BeyondTrust contends that relying on these statements caused it to miscalculate the probability that it could depend on the revenue stream from the agreement with the Army, ultimately leading to financial harm.

Taking the allegations in BeyondTrust's counterclaim as true, as I must, it is plausible at this stage that BeyondTrust was justified in relying on Lieberman's statements. As a result, Count Two of Defendant's counterclaims is sufficiently pled, and the Court denies Plaintiff's motion to dismiss the negligent misrepresentation cause of action.

**IV.  CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's Rule 12(b)(6) motion to dismiss Count I and II of the counterclaims.  (D.I. 14).

Entered this 9th day of April, 2020.

/s/ Richard G. Andrews____
United States District Judge